Mr. D. Good morning. My name is Francis X. D. and I represent Appellant UBS Financial Services, Inc. May it please the Court, I have two basic points to argue on this appeal. One is that the arbitration award should be set aside because it violates Section 5 of the Federal Arbitration Act. Section 5 requires that if there is a method for selection of arbitrators set forth in the party's agreement, that method should be followed. And this Court in Cargill-Rise held that if the method provided for is not followed, the arbitration award should be set aside. In this case, it is undisputed that UBS did not have any input whatsoever into the selection of the arbitration panel. Is that your own fault? No, it is not. The record is clear that UBS's prior counsel did not receive the list. And as soon as it knew, as soon as prior counsel received a notification that the list was due the day before he received the notification, he immediately contacted Padussis' counsel to get consent for an extension of time. Padussis' counsel refused. He then applied to FINRA for... At that point, did he have the list? He did not. When he asked for the extension, they didn't have the list. He asked for extension and asked that the list be sent to him. And they declined to agree. The other counsel declined to agree. Padussis' counsel declined to agree, and because he did not agree, FINRA would not grant the extension. And then I took over the case, and I took an appeal from that denial to the director. And once again, Padussis' counsel objected. The director of FINRA? He had a right to give you an extension if he wanted to. Yes. And counsel, before Padussis, refused to grant that extension. At that time, did you have the list? No, did not have the list at that point yet. How long did it take them to get you the list? It took several weeks to get the list. Why? They just took time to get it to us. He said the list was mailed and not returned. But there was no proof of mailing under the mailbox rule. But is that a factual finding that the director has made? I mean, it's just, we're just talking about the application of the rules. Nobody was suggesting that there be a different method of selecting the arbitrators from the strike-rank method that FINRA follows. We're talking, so we're not talking about disregarding the rules. We're talking about the fact that you don't like how the rules were applied. And that's a different question from disregarding the rules. My position is FINRA disregarded the rule. They're saying, no, we sent you the rules, and you didn't return the list in time, or you didn't act in a timely way. There's no competent evidence that FINRA actually mailed the list to prior counsel. All there is in the record is a statement by the director that it was mailed. There's no proof that it was mailed properly addressed to counsel. There's no proof that it was proper postage. In other words, the basic mailbox rule. From the other point of view, didn't your counsel, Mr. Comey, transfer the case to a new attorney five days before the list was mailed? And so, you know, this is not your fault, but there could be confusion or it could fall between the cracks or whatever. And there's no mail that's ever returned to FINRA as being undeliverable. And they make the point that you should have been expecting this list after Mr. Produces had filed his answer. And I just see this as some sort of evidentiary dispute, which operates below the level of whether the FINRA rules were disregarded. I don't think they were disregarded because nobody, you get to strike, each side gets to strike four and rank the remainder. And you would have done that if you had asked for a continuance in a timely fashion. The prior counsel asked for continuance as soon as he learned that the list had been mailed out. But let me respond to the points you raised, Your Honor. First of all, it's not a question of application of the rules. The rules clearly say that both parties are to have input into the selection of an arbitrator. That clearly was not done. I'm sorry. I thought the rule also said, but if we don't hear from one party, we're going to assume that that party doesn't have any preference and act accordingly. But FINRA and counsel for Producers were both on notice from Mr. Comey, prior counsel, that he did not receive the list. So they can't say that we thought you weren't going to respond. I think it's the district court said this. I might have come out differently on the extension request, right? Like the equities are a little bit, it's hard to sort of figure out the equities or these evidentiary questions. But at the end of the day, you guys agreed, right, to arbitrate under FINRA rules. And I think the FINRA code actually gives FINRA a lot of discretion to make decisions that are consistent with the broad purposes of the rules. And they made a decision. And so I don't see how that's a Section 5 problem. It doesn't give FINRA clear and unmistakable discretion that's required to permit FINRA to make a decision like this under the Peabody case. Under Peabody, if it's a question as to the method of selecting an arbitrator, then that's for the court to look at. To follow up on my colleague's good question, how do you get around Rule 13404, which says the ranked list must be returned to the director no more than 20 days after the dates upon which the director sends the list to the party? Then it goes on to say, and you're very familiar with this, if the director does not receive the party's ranked list within that time, the director will proceed as though the party did not want to strike any arbitrator or have any preferences among the listed arbitrators. So you're on notice under the FINRA's rules that if you are not on top of this, you're going to lose your rights. And part of what arbitration represents is an expeditious proceeding. And this is a rule of expedition. But selection of an arbitrator or arbitrators is 75% of trying these FINRA cases. If the party isn't allowed... If it's 75% of the ballgame, then I would think that issue would be the one above all that you were on top of, and particularly after the gentleman in your opposing party had sent an answer and a counterclaim. And there's no question that you received the answer and the counterclaim. And boy, I would have been all over that list talking to FINRA and everything else. Well, first of all, the rules provide that the list will be sent out after the last answer is filed. The last answer was not due yet to the counterclaim. Now, FINRA had some internal interpretation of that that wasn't published. So prior counsel was well within his rights, assuming based upon the published rule, not the unpublished. There's a larger point at issue here, and that is the Supreme Court has a very broad-based majority in favor of arbitration, and particularly in favor of arbitration like this, which is a dispute between two entities within the securities industry. It's not a civil rights claim or anything else, and this is the kind of thing that the Supreme Court says is right at the heart of what arbitration is supposed to... where it's supposed to take place. And so you get a situation where you signed up for the FINRA rules, and not anybody else, where the strike rank procedure was followed, but where you don't like the way the rules were applied. But if every time a party doesn't like the way that rules it signed up for are applied, we're going to just chew arbitration to death with these kinds of appeals. What the parties bargained for was an expeditious resolution to their proceeding, and what they're getting is a long, protracted set of appeals. And, you know, you signed up for these FINRA rules. You didn't like the way they were applied. You didn't like what the panel decided, and so you're trying to let us... you're trying to get us to relieve you of it. But you signed up for it. We're happy with following the FINRA rules, Your Honor. That's not something we're trying to get out of. FINRA didn't follow the rules. The rules require that we get the list. The uncontradicted evidence is that our side didn't get the list. The rule says that the director will send the list generated by the neutral list selection to all parties at the same time. But it then also says the parties will also receive employment history for the past 10 years and other background information for each arbitrator listed. So it does say send one place and it says receive in another place. It wasn't received. Nothing was received. Employment history, I assume that means everybody would agree that means proposed arbitrator, I guess. Right. But it does say receive employment history for each of them. If you read those rules... You say you didn't get them, and they don't say that you got them. They say they mailed them. All they say is they mailed them, right? There's no proof of mailing. It's just a conclusory statement, yes. But did they say that they mailed them? Is there any affidavit that they mailed them? No, there's no affidavit. Is there an affidavit that you all didn't get them? There's an affidavit from Comey and his assistant that they didn't receive them. Okay. There's two affidavits that you didn't get them and no affidavit that they... No affidavit was mailed. No affidavit was mailed. Just a conclusory statement. There's no affidavit that was mailed with proper postage and properly addressed. How did the district judge deal with the... District judge... Wait a minute, with the Cargill case. What's it called? Cargill-Rice. Cargill-Rice, Judge Russell's case. He just applied the broader standard, the general standard, a review of an arbitration award, which is very pro-arbitration. But my point is on the Cargill-Rice, this goes to the issue of selecting the arbitrator that wasn't followed. Section 5 of the FAA says if the method of selecting an arbitrator is not followed, then that award must be set aside. ThinRed did not follow it. The whole... Look at the different paragraphs of the rules. They contemplate not only that each side will receive the biography of all the arbitrators, but will also have input into the selection of an arbitrator. But it's a fair factual finding that you received it and didn't respond to it and didn't just... For some reason, it got misplaced or it went before the... You know, it fell between the cracks or whatever. It was not... The mail was not returned as undeliverable, which would have been a totally different case. I mean, it directly says it's sent. There's certainly no evidence that it wasn't received. And if the mail is not returned, if mail is not returned as undeliverable, it is a fair inference that when you send a letter, it's received. No, Your Honor. If the mailbox rule was followed and was evidence that it was actually mailed, yes. Okay? But that can be rebutted by evidence that it was not received. It is uncontradicted that the list was not received. But that's what it comes down to. It comes down to an evidentiary question of whether the list was received or not. It's not a question of whether the method of selecting arbitrators wasn't followed. It's just a factual question of whether there was receipt or not. And a director of arbitration at FINRA, even though you might disagree with him, even though I might disagree with him, can make a factual finding as to whether a party did or did not receive it. Did he ever do that? He didn't make a factual finding, Your Honor. He just flat out said it was mailed. There's no proof that it was actually... That's what I was thinking. He never said it was received. He said mailed. Yes. Okay? And the rules contemplate that both parties receive the list unless one party makes a decision not to answer. And under the circumstances here, it was totally unreasonable and a violation of the method for selecting arbitrators for the director not to allow UBS to get the list and rank and strike. But the director knew and Peduce's counsel knew that Comey was saying he didn't get the list. All right. Thank you, sir. Thank you. Mr. McDermott. Good morning. E. Patrick McDermott, Annapolis, Maryland, for the Apple League. Gary T. Peduces. First of all, FINRA should be sitting in this chair because they're the ones who are involved in this whole process with regard to the distribution of the list and what UBS's story is because that's their story and they're sticking to it. There was no discovery about the list. There was no investigation. There's a story that UBS made up or didn't make up, whatever, but it's a story they gave to FINRA in a motion where they needed to show good cause. I had no opportunity to debunk that story other than to say that we believe that they dropped the ball. So there is the nature of arbitration. Who are you saying dropped the ball? Well, I believe what happened is it was August, it was vacation time, the last two weeks of August. Mr. Comey asked me for an extension, I think, on something with regard to his answer or something because he sent me an email and said Frank D. is picking it up because there's a statutory claim. And my email back was, that's a great choice. I've known Frank since the 70s. You couldn't find a better lawyer. Next thing you know, there's no submission of the list in a timely fashion and Mr. Comey's saying that they didn't get the mail. And then they're saying there's also a reminder sent out that we forgot about this as well. So it's not only the first list. There's a reminder. And they said, oh, we got that late. So now it's between UBS and FINRA. And FINRA applies its procedures. Well, why didn't they say they'd received it rather than that they'd sent it? I had no involvement in that whatsoever. I know you didn't, but you're the only one. You'd have to ask FINRA. You're the only one that got here. Well, but that's not fair. You're representing them. You're the only one that got here. That's not fair. All that has to happen under the law. Fair. All that has to happen under the law is that FINRA has to follow its procedures. And they say that pursuant to their procedures, there is no good cause. They were the persons, essentially they're the opposing party in this situation, Judge King. They're the one that said, no, we sent the list and we don't buy your argument. Sorry. And you've contracted to these rules. What you're saying is an evidentiary matter. There is support for the proposition that they received it and did nothing. That's right. That's right. And that was FINRA's decision, pursuant to their rules and procedures. Well, even if you're under the mailbox rule, you're entitled to rebut that you received it. I've tried a few mailing cases myself. Well, then. If you prove you put it in the mail and it's properly addressed, you can invoke presumption that there was receipt. That's correct. And that presumption can be rebutted. And that's right. And here they say they filed two affidavits. It says they didn't get it. That nobody filed the affidavits even to say it was sent. There was an assertion it was sent. And nobody said we invoke the rule, the presumption that was received. And there was never a finding that it was received. No finding was received. There was a finding it was mailed. And you're framing. And the affidavits distinctly say it wasn't received. So there's no counter affidavits. And you're framing the perfect litigation scenario for litigation, for judges, for rules of evidence, for discovery, for requests to admit, for everything that does not apply. But in our Cargill case, if they agree on a method of naming the arbitrator, the method shall be followed. I mean, it's quoting the Arbitration Act. The method was followed. Fenner says it was. They made that decision. They were given the power to do that by UBS. And Fenner decided. Well, the rule, the Fenner rule says they shall receive employment history for each arbitrator. So under the standard of review here. For 10 years for each of them. So as the judge below said, he says I may have seen it differently. He didn't use the word received. There's no finding of received. Well, I could argue, I quite honestly could argue just as effectively that they did get the list. Your position is, this is arbitration, it's not litigation, and that arbitrators make these sorts of rulings and findings with respect to the rules and application of the rules all the time. You can disagree with the finding that was made, you know, but there's evidence to support that. The Senate, at least one party, got it. The one that wasn't returned is undeliverable. There was a change of counsel right before the thing was sent. It was sent in the aftermath of shortly after Peduce's file, the answer and counterclaim. And in other words, there are facts here from which one can make a finding that the list was received. It comes down to whether it was clearly erroneous or whatever. But in arbitration, if every time somebody disputes a question of receipt over this or that, and we're applying the rules and making a factual determination under the rules, I might add, we're going to be up here all day long with appeals from this evidentiary ruling or that. And I think, you know, this is a pro-arbitration Supreme Court. In fact, my good friend Judge King has written one of the best opinions on the whole value of the arbitration process in his 3S Delaware. All you need to do is look at my friend's opinion, and he'll tell you why it's important. That's a pro-arbitration court, too. Why arbitration, it shouldn't be chewed up by successive appeals, because you destroy the value of a party's bargain when you do what we're doing. And the other thing I want to reiterate, I think it's important. On the other hand, we don't want to encourage a lot of sloppy practice. Do you have anything in this record that would show that they found that these lists were received? Yes. Finner said they sent them. No, no, no, no, no. There's a difference between the word sent and the word received. I ask you about received. Well, again, I can't. You have a finding that was received. Finner found that UBS did not have good cause under all the facts and circumstances. Did they find that these lists were received? That's a simple question, yes or no. Then you can explain all you want. Okay, good. Did they ever find it was received?  Pardon? You can't. If somebody says it didn't happen, it didn't happen. They did not find it received. No, they did not. They found it was sent. How are they going to find whether it was received or not? The point, you know, without having massive discovery and arbitration. So, in other words, to try to find out from one party to find out whether the other party received, you're going to have to have lots of discovery, lots of this, lots of that. And meanwhile, you're barging down arbitration, which is what the parties bargain not to do. When I mail a Christmas card or a letter or a condolence card or any kind of little note, the question is, I put that in the mailbox, and in 99 cases out of 100, even if it isn't certified or registered, and even with the United States Postal Service, I have still mailed the letter with a high degree of confidence that it was received. And in fact, it almost always is. And the question is whether in this kind of situation, an arbitrator applying the rules, not disregarding them, but applying them, is entitled to draw upon that inference. And your argument is, I understand it is. Yes. It was drawn twice. It was drawn once by Fennerer, which his administrator, which UBS agreed would make this decision, regardless of all that we've discussed. They didn't invoke that presumption and make a finding. They didn't do that. And they didn't make a finding that it was properly addressed. And I agree. I think what Judge Wilkinson said, 99.5 is probably 99.9999. If you put a proper address on it, it's going to get there. If you don't put the proper address on it, there's probably zero chance it's going to get there. And, you know, that's part of it, is getting the right address on it. I wasn't there. And if we want to take arbitration and open it up to being pre-hearing. Even if it's improperly addressed, you get it eventually. Because if it's improperly addressed, it's returned to the sender saying it's undeliverable or whatever. But the improper address thing would have shown a return to the sender. Now, sometimes they come a little late and everything, but that never happened. And that was a factual finding made by the director in the finding that there was no good cause. Is it regardless of the argument with regard to the mailbox rule, they said we never got the list back. And we considered that in weighing all the facts. I did not prepare to speak about this particular issue as long as we have because I think the law. The other thing is you've got a decision from the Supreme Court and a number of decisions from our court in 3S Delaware and Dowser and everything that said these kinds, in particular, Howsam, it says these kinds of subsidiary questions, subsidiary procedural questions, simply have to be left to the arbitrator. And Howsam is very clear about that. And so is Doxer. And so I think also is 3S Delaware, that these subsidiary evidentiary questions, was there or was there not receipt, is a classic question, a classic subsidiary question on to Howsam, that if this isn't left to an arbitral panel, we're going to be chewed up up here. And I agree 3S Delaware was an exceptional decision. And I'd like to discuss the set-off issues. Otherwise, I won't have time when counsel raises it. Can I ask you just one last question before you move off this? But I promise it's not about what happened to the letter. So the district court relied on both the fact that FINRA applied its own rules and then anyway it seemed to be an alternative ground for the decision. And anyway, this was raised in arbitration. It's a procedural question. The arbitrator, the panel denied the motion. Are those independent grounds for a firm? That's what I argued. In fact, I demanded in the quote in the record is, as I said, someday a federal court will be reviewing this, and I therefore ask for a ruling on the record, given your power to decide the FINRA ruling, whether in fact we should proceed or not on the record. So I requested and got a second finding from the panel that, yes, they were properly constituted and that the rules were followed and that this was an appropriate proceeding. So it's a belt and suspenders process where you actually have two levels of decision makers that, again, UBS agreed to. This is what we contracted for. And, you know, there's good and there's bad about arbitration. As a Fulbright scholar, I taught arbitration law in Shanghai, China, for a year, and it's always fun to explain to Chinese students the finality of arbitration. It is, as you then discuss all the cases you've had, that it's not final, particularly if somebody has enough money to try to ground you into the ground in litigation. So there's a finality here. That's what the process is all about. And if arbitration is to survive, it's going to have to be final, and we have to trust, as the law says, let the arbitrators do their job, and they don't even have to do a perfect job. They just have to do their job. And, by the way, the arbitrator's in this case because sometimes people think that this is really not the merits that we're talking about. We're talking about the arbitrators sitting in judgment of their own validity. Right. That's the second part. And that's another issue. Like we wouldn't let a judge sit in judgment of his own case. Right. And these arbitrators, Maurice Dunne, actually, if you look and take official notice or judicial notice in Lexis, I think 50-some reported cases he's argued before this court. He was actually counsel for the Democratic Party in the Watergate case with Judge Ritchie. So he's a very experienced man. Jay Snowden Stanley, partner at Sam's Bowen Simmons, reported 67 reported cases. He's argued in the Fourth Circuit Court of Appeals. So two of these arbitrators are very sophisticated lawyers. They're talented persons. Nobody was denied justice in this case. The law doesn't support it. And I want to get to the setoff because I believe it's going to be raised by UBS and I'd like to address that. UBS had an opportunity. There was an award and there was no setoff given. Right. The judge below found that where there was silence, that the awards would stand as set forth. He noted that the arbitrators had said that no other relief was granted. And he cited circuit law. Other decisions of the district court in Maryland have similarly said that when there's silence, then the failure to state offset applies. We also cited FINRA. UBS could have dispelled the silence, could it not? If it had asked, could it have submitted a motion for clarification? That is correct. Under the 13905 of FINRA rules under awards. It could ask if there's a setoff? That is correct. And it could have asked me. But it didn't do that, did it? No. And I actually sent them a letter immediately and said, I've got to lean against this judgment. I mean, that would wake a lot of persons up. But the suspicion arises that they didn't ask for clarification and they didn't ask the question about the setoff because they were afraid of the answer. And they also didn't ask for remand in the court below, which if you look at the FINRA rules say that the courts are empowered, they can send the case back, so to speak. They didn't ask for that as a remedy and they passed on it all along. And I think the reason is, if you look at the rest of the award, 75% of the costs of the case were paid by UBS. We only had to pay 25%. There was a contractual provision in the promissory note that said that Mr. Produce has had to pay for the cost of collecting under the note. The panel decided that there would be zero amount paid under that provision. That's highly unusual to get no fees in the collection of a promissory note, but the panel reasoned as to why and it's in the decision in the record. I think the panel had a hostility to UBS's position across the board, and we briefed that and that's in some ways my belief or Mr. Produce's position. But I think that arbitration should be deferred to. Obviously, the standard of review for the court below is abuse of discretion, which implies some kind of illogical application of facts or law. And I think the court below fairly cited the existing law in the circuit. And there's actually a Baltimore Sun case I didn't cite where another judge cited the circuit, the Fifth Court circuit laws being where it's silent, there is no offset. So I think that's the relevant case law under the standard of reviews that apply first for an arbitration decision, which obviously is very narrowly circumscribed. And then we look at the standard of review for the court below. There's no way in the world UBS can meet its heavy burden because, again, at the end of the day, we want to look at burdens here. The burden for UBS under the statute to try to attack the set-off, it's a heavy burden statutory. Equity, I'll argue equity all day. And, Judge Wilkinson, you stated in the case before that the individual sat on its hands and now they want the court to dig them out. Well, UBS sat on its hands because it could have gone to the panel and said, what do you intend, what did you intend to mean here? There were two provisions. One provision they say was a Scrivener's provision, and that's why they couldn't go forward because it wasn't a Scrivener's error. But if you look at 139053, all they have to do is call me and say, let's agree to go and get this clarified. Now, you could argue I could have called them and said, let's go get this clarified. I didn't have to based on the controlling law, the fact that I had sophisticated counsel who were the arbitrators, who I think it's not my duty at that point in time because I believe that the award was in our favor and there was no offset. So, again, if UBS had a problem, instead of sitting on its hands, and that's the common law aspect of setoff, because all setoff that's not statutory is the common law and equity comes in. And equity says that it aids the vigilant. And you have to try to help yourself, and you can't find other case law that arises in equity when you fail to meet a fundamental equitable principle of going back to the panel and getting clarification. Also, I think as a whole, UBS doesn't have clean hands. They basically sued a man that they knew couldn't pay back, and that's discussed at length. For some reason, UBS tries to argue against us on that. But I would argue that the panel knew what UBS was doing, that they were basically beating this person up in arbitration. The panel saw all of this, and the panel dispensed its unique form of justice for the unique dispute resolution model of arbitration for a unique fact pattern that doesn't rise to anything more than a well-litigated, I think, 14-day case with all this transcript. My goodness, this was one heck of an arbitration and an appeal process all the way through. I think it's over, and there's other courts of appeal that have talked about the idea that enough's enough with the appealing of arbitration awards and that there should be a finality to the process. I'd like to thank you. Bob. I'm fine. Pam. We're fine, thank you. A couple of points. First of all, in terms of the setoff, what happened here is that when we got the award, it was clear that PEDUSAS was not going to pay the award against him of over $1.6 million. And we had 30 days. If we didn't file to vacate the award, we only had 30 days, or we had to pay the $900,000-plus that the panel awarded us. So we're faced with a situation where we've got 30 days to pay, knowing full well that PEDUSAS isn't going to pay us. That's point one. Point two, the director... You're asking us to sort of review the merits of the arbitral decision. With those last comments. The district court committed legal error in two respects on the setoff. One, the district court concluded that there was a presumption against setoff. That's legal error, and that's grounds to set aside that determination under Fourth Circuit law that we cited in our brief. Presumption against what? The district court concluded that it's a matter of law, there was a presumption against setoff. And that's incorrect, it's a matter of law. Why didn't you request clarification on the matter of the setoff? Because as we set forth in our reply brief at page 23 to 24, we had 30 days for several reasons. One, we had 30 days to either pay or file an action to vacate. Two, the director, and we cited the cases, the director has taken a position that under Rule 139.05a.2, there's no grounds to ask the arbitrators to change their award to provide a setoff. So we're faced with this situation where the director has already taken a position in other cases, and we cited in our reply brief, that they won't submit this matter of setoff to the arbitrators after the award is issued, number one. Number two, the district, so we were faced with a situation, we didn't move to vacate, we're going to be paying producers over $900,000 when he's already taken a position he's not going to pay us. So that would be totally unjust. But this, I mean, this all sounds to me like you just don't like the outcome of the arbitral proceeding. And I come back to the point, this is what you bargained for. This is what people in the securities industry bargain for all the time. If arbitration has any application, it's in the financial industry. These cases are arbitrated all the time. And, you know, most of them, I guess, turn in favor of the company. But this is a situation where you clearly knew what the FINRA rules were. You knew what the rank and strike procedure was. You knew that you had to get back to them within 20 days. You knew that the director had authority not to grant a continuance if you didn't get back to them in a timely fashion. You knew that the arbitral authority was going to apply the rules and make factual findings such as it did here. But you just don't like the way it turned out. And now you're trying to slip out of your agreement. The very thing that you agreed to do because you didn't like the way it did it. But that's what happens in arbitration. Everybody's not always happy with the way it turns out. That's not accurate, Your Honor. We would be happy if FINRA followed the method of selecting an arbitrator. We would be happy with that. They did not follow it. And it was just outlandish not to get a couple of extra days, my prior counsel a couple of days to go over the list and to rank and strike. That was absolutely outlandish and that wasn't following the method and that's a gateway issue under Section 5 of the Federal Arbitration Act and Supreme Court decisions and this Court's decision in Cargill-Rice. It wasn't an evidentiary issue. There is no evidence that the list was mailed. It is a statement by the director in conclusory form.  It is not unusual for FINRA to think something was mailed and they didn't mail it. They make mistakes like that all the time. So the method wasn't followed. That's a gateway issue. That's grounds for setting aside the award, number one. Number two, on the set-off, we didn't sit on our hands. We had no choice. The cases we cite in our reply brief are that the director will not submit it to the panel in an issue such as this. Number one. Number two, we had 30 days. So we had to file to set it aside. And the law is clear in this circuit that the district court, Eric, it's a matter of law, because the district court concluded there was a presumption against set-off. The law is that there's no presumption against set-off. Can I ask a question? And I may be getting this wrong, but I thought FINRA had its own rule saying that the background presumption is that if a set-off is not made clear on the face of the opinion, then there isn't one. No, FINRA does not have it. As a matter of fact, we submitted a 28-J filing that FINRA just issued a clarification. They call it a clarification of the rule because of just this type of situation. And they clarified it to say that if the award is silent, then there's a presumption in favor of a set-off. I totally agree that if this case came up today under that new rule, that would be the rule. But I thought it seemed pretty clear that until that new rule came out, the presumption was the other one. No, no, FINRA doesn't have that rule. Counsel cited to another rule where he said that that precluded a set-off. And that rule doesn't even address it. And we cited that in our reply brief. And as a matter of fact, when FINRA modified the rule, it didn't touch that rule. And I submit it didn't touch that rule because it's not applicable. And we've cited in our reply brief why it was not applicable. How could this panel not have considered a set-off? I mean, it just seems to me that it would be highly unlikely that it just, oh, well, you know, that it overlooked that possibility. I mean, how could they, how could this panel not have done that? It seems to me right at the heart of the, of trading the case. That happens all the time, Your Honor. It happens all the time. The obviously. Except we can't consider your testimony, though. I'm sorry? We can't consider what you're saying about that as evidence, can we? It happens all the time. I've got evidence here. Well, I think it goes both ways. I don't think it's either one. The other thing is just one point on the change of counsel. That's a red herring. The counsel to whom Finner said they'd mail the list was Mr. Comey. Comey was still counsel of record at the time the list was supposedly sent. So the change of counsel had nothing to do with anything here. Well, able lawyers like yourself are always able and, you know, the legal mind is a very ingenious thing. And it's always able to pick at this or that or some other aspect of arbitration. And I think part of the Supreme Court's support of arbitration in a narrow standard of review and everything is as a safeguard to the kind of legal ingenuity that can be always unleashed by a capable counsel against an arbitral decision. This is what I think they didn't want to happen. I agree with you on the merits. Well, that's the fact that you're an able lawyer. I agree with you on the merits, Your Honor. Fair enough. But not on the gateway issue that the Supreme Court says is reserved to the courts. All right. Thank you, sir. We'll come down and we'll agree counsel and then we will move into our last case.
judges: J. Harvie Wilkinson III, Robert B. King, Pamela A. Harris